814 A.2d 123

Milton WITHERSPOON

v.

MARYLAND PAROLE COMMISSION.

No. 2428, Sept. Term, 2001.

Court of Special Appeals of Maryland.

Dec. 27, 2002.

**102**

Mark Gitomer, Owings Mills, for appellant.

Susan Howe Baron, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for appellee.

Argued Before KENNEY, BARBERA and PAUL E. ALPERT, (Ret., specially assigned), JJ.

PAUL E. ALPERT, Judge, Ret., specially assigned.

In late August of 2000, Milton Witherspoon, the appellant, began serving a 15–year prison sentence for possession of cocaine with intent to distribute. In October of 2001, appellant filed a petition for writ of mandamus in the Circuit Court for Baltimore City, requesting that the court direct the Maryland Parole Commission to conduct a parole hearing upon his completion of only about 16 months of his sentence. The court denied the petition without a hearing, and appellant filed this appeal.

### ISSUE

Appellant argues, in essence, that the trial court erred in failing to grant his petition for writ of mandamus, in that the Parole Commission is improperly refusing to consider his diminution of confinement credits in determining the date on

which his parole hearing should be held.  We find no merit in this argument and affirm the judgment of the trial court.

## FACTS

Appellant began serving his 15–year sentence on August 27, 2000.  On June 12, 2001, appellant, through counsel, sent a letter to the Maryland Parole Commission expressing his opinion that he would become eligible for parole on or about December 12, 2001.

Appellant pointed out that an inmate serving a determinate term of confinement is ordinarily eligible for parole after serving one-fourth of that term of confinement.[1]  He further pointed out that "one fourth of 15 years is 1,368 days." Appellant observed that he had been awarded 899 good conduct days upon his commission to the custody of the Commissioner of Correction.  He theorized that, in order to determine the proper date for his parole hearing, the Parole Commission should subtract the 899 good conduct days from the 1,368 days that constituted one-fourth of his total sentence.  It should then conduct a hearing 469 days after his sentence began.[2]

Both the Parole Commission and the trial court flatly rejected appellant's argument.

## DISCUSSION

Appellant's argument is based on his reading of § 7–301 of the Correctional Services Article.  In pertinent part, the statute provides:

(a) *In general.*—(1)  Except as otherwise provided in this section, the [Parole] Commission shall request that the

---

**1.**  *See* Md.Code (1999, 2002 Cum.Supp.), § 7–301(a) of the Correctional Services Article.

**2.**  Curiously, appellant chose December 12, 2001, a date that fell on a Wednesday 472 days after he began serving his sentence, as the correct date for his parole hearing.  Appellant does not explain why he did not choose the previous Monday or Tuesday, and we are aware of no State holiday or other event that would require the delay.

Division of Parole and Probation make an investigation for inmates in the local correctional facility and the Division of Correction make an investigation for inmates in a State Correctional facility that will enable the Commission to determine the advisability of granting parole to an inmate who:

(i) has been sentenced under the laws of the State to serve a term of 6 months or more in a correctional facility; and

(ii) has served in confinement one-fourth of the inmate's aggregate sentence.

(2) Except as otherwise provided by law or in a predetermined parole release agreement, an inmate is not eligible for parole until the inmate has served in confinement one fourth of the inmate's aggregate sentence.

. . .

(d) *Life imprisonment.*— . . . an inmate who has been sentenced to life imprisonment is not eligible for parole consideration until the inmate has served 15 years or the equivalent of 15 years considering the allowances for diminution of the inmate's confinement under § 6–218 of the Criminal Procedure Article [ (concerning credit for time spent in custody) ] and Title 3, Subtitle 7 of this Article [ (concerning diminution of confinement credits) ].

. . .

Code (1999, 2002 Cum.Supp.), § 7–301(a) and (d) of the Correctional Services Article.

Appellant argues that, because the statute directs that diminution of confinement credits be considered in determining the parole eligibility of inmates serving parolable life sentences, they should also be considered in determining the parole eligibility of inmates serving determinate terms of confinement. He contends that "nothing in the Correctional Services Article forbids the consideration of diminution credits in establishing parole eligibility for those serving sentences

other than life." Appellant concludes that, under the circumstances, the rule of lenity should be applied to require consideration of the credits in determining his parole eligibility.

█ Contrary to appellant's interpretation of § 7–301, the statute *does* expressly preclude consideration of diminution of confinement credits in determining parole eligibility for inmates with determinate terms of confinement. As the above-quoted portion of § 7–301 reflects, the legislature specified in two separate places in part (a) that such inmates are not to be considered for parole until they have "served *in confinement* one-fourth of the inmate's aggregate sentence." § 7–301(a)(1)(ii) and (a)(2) (emphasis added).

█ It is axiomatic that

the paramount rule of statutory construction is to ascertain and effectuate the intent of the legislature.... The starting point in the first instance is the plain language of the statute.... We view the words of the statute in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood.... If the words of the statute are clear and unambiguous, our inquiry ordinarily ends and we need investigate no further, but simply apply the statute as it reads.... [The Court of Appeals] has also applied the principle of *"inclusio unius est exclusion alterious,"* the expression of one thing is the exclusion of another, to the interpretation of statutes.

*Gillespie v. State*, 370 Md. 219, 222, 804 A.2d 426 (2002) (citations omitted). Clearly, time during which an inmate is mandatorily released from custody due to diminution of confinement credits is not time spent "in confinement." § 7–301(a)(1)(ii) and (2).

In any event, as the Attorney General recently explained in an opinion issued upon the inquiry of the Chairperson of the Parole Commission, the legislature deliberately and for good reason took a "different approach to parole eligibility for an inmate serving a sentence of life imprisonment" than it took for inmates serving determinate terms of confinement. 86 Ops. Att'y Gen. ——, ——, Opinion No. 01–002 at 1 (January

25, 2001). As the Attorney General explained, inmates conditionally are awarded diminution credits for good conduct and may earn diminution credits for work tasks, education, and special projects. *See generally* Code (1999, 2002 Cum.Supp.), §§ 3–701—3–711 of the Corr. Serv's Art. For inmates serving determinate terms of confinement, each credit represents one day of early release.[3] The total number of credits is subtracted from the maximum expiration date of the inmate's term of confinement. *See* Code (1999), § 7–501(3) of the Corr. Serv's Art. *See also Moats v. Scott,* 358 Md. 593, 597, 751 A.2d 462 (2000); *Geddings v. Filbert,* 144 Md.App. 95, 103 n. 3, 796 A.2d 834 (2002).

An inmate serving a parolable life sentence cannot obtain early release based on diminution of confinement credits. That is because there is no maximum expiration date on such an inmate's sentence from which the diminution credits could be subtracted. In explaining the reasons for the legislature's "different approach" for determining parole eligibility, the Attorney General wrote:

> It is apparent that, in authorizing parole of an inmate serving a life sentence, the Legislature intended to incorporate, as it did for inmates serving terms of years, incentives for good behavior and participation in education and work programs. For an inmate serving a life sentence, however, credits for good behavior and participation in those programs results, not in automatic release from custody, but only in earlier eligibility for parole.

*Id.* at ——, Opinion No. 01–002 at 5.

Appellant's theory that his good conduct credits should be considered in determining his parole eligibility is unworkable for another reason. Upon an inmate's commitment to the custody of the Commissioner of Correction, the inmate is conditionally awarded good conduct credits for each month of the term of confinement imposed. *See* § 3–704(a). Depend-

---

**3.** Such inmates are subject to "all laws, rules, regulations, and conditions that apply to parolees . . . ." Code (1999, 2002 Cum.Supp.), § 7–502(b)(1) of the Corr. Serv's Art.

ing on the offense for which the inmate is incarcerated, he or she is conditionally awarded five or ten such credits per month. *See* § 3–704(b)(1)(ii) and (2). Some or all of an inmate's good conduct credits may be revoked if the inmate violates any institutional disciplinary rules. *See* § 3–709(a). Appellant would have the Parole Commission take into account 15 years worth of conditionally awarded credits when he has served less than 16 months. We are confident that the legislature intended no such result.

**JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.**